## Case No. 5,275.

### GAULT v. WOODBRIDGE et al.

.[4 McLean, 329.] [1]

Circuit Court, D. Ohio. Nov. Term, 1847.

EXECUTION—LEVY — NOTICE TO SUBSEQUENT PURCHASERS—DEFINITENESS OF LEVY—PAROL EVIDENCE.

1. A levy on property, real or personal, should have such certainty as to show to a subsequent purchaser, on what the levy was made. Short of this, there can, it would seem, be no notice to a subsequent purchaser.

2. Parol evidence, after conflicting rights have grown up, can not be received, to make the levy certain, which before was wholly uncertain.

3. A levy on one-half of a lot, without designating which half, or of one hundred acres, in a section, is too indefinite to convey the title.

4. A defective levy being set aside, on motion, makes good a junior levy.

In equity.

Mr. Stanbery, for plaintiff.

Mr. Swayne, for defendants.

OPINION OF THE COURT. This is an injunction bill. On the 2d of September, 1823, the Bank of the United States recovered a judgment in this court against Q. Davis as principal, the complainant W. W. Gault and John Evans, as sureties of Davis, for seven hundred fifty-four dollars and twenty-nine cents damages and costs. That the sum of forty-eight dollars eighty-one cents was made on execution April, 1824, and six hundred eighty-two dollars May the 23d, 1834, from Davis, the principal debtor. That upon a fi. fa. being issued on the judgment September 13th, 1839, the deputy marshal on the 26th of the same month made a levy,

[1] [Reported by Hon. John McLean, Circuit Justice.]

in fact, upon a part of out-lot number nine, adjoining the town of Newark, described in the agreed case and in the affidavits of the appraisers, but made return of the levy as is set forth in the answer—that is, without describing what part of the lot was levied upon. From the affidavit of the appraisers, it appears they appraised the specific part of the lot so levied upon. That at the time the levy was made, Davis was seised of the part of the lot levied on, and there was then no other lien or incumbrance upon it. That the part of the lot levied on was worth seventeen hundred dollars; and that Davis had no other property subject to execution. On the 16th of October, 1839, the specific part of lot nine was levied on, under another execution in favor of the Clinton Bank of Columbus, which was a subsisting levy, when the levy under the execution of the Bank of the United States was set aside. In June, 1840, Davis conveyed the part of the lot levied on to Hagg and others. At December term, 1841, on the motion of the attorney for [John] Woodbridge, the assignee of the judgment of the Bank of the United States, the levy under the said execution was set aside, and the property of the complainant Gault is now under execution, no other property of Davis being found to levy upon. And on the part of the complainant it is insisted, on the above facts, he is clearly entitled to relief.

It is contended that the levy, though vague, as returned, was not void. That a sale under it would have passed a good title, upon proof that the actual levy ·and appraisement were specfic. Or it might have been amended on motion. And it is urged the cases of Matthews v. Thompson, 3 Ohio, 272, and Douglas v. McCoy, 5 Ohio, 522, are conclusive upon the point. In the first case the levy was upon one hundred acres in section four, town seven, range four, with no further description. A sale was had without amending the levy, and upon ejectment the court held that the uncertainty of description might be supplied by parol. In Douglas v. McCoy, the levy was upon two-thirds of lot number one. The court say such a description is defective, but may be made good by parol, and they refer to the testimony of the sheriff, that a specific part of the lot was appraised. This parol proof was admitted, and by force of it, the levy held good against a purchaser under a subsequent deed from the judgment debtor. That by this doctrine it was not necessary to amend the return. The act of Woodbridge in causing the levy to be set aside, at the December term, 1841, wholly released the lot, and thereby it became liable to the subsequent execution, in favor of the Clinton Bank of Columbus, and is wholly lost, so far as the Bank of the United States' judgment is concerned. The judgment of the Bank of the United States was not a lien, it is said, upon this lot, as the title to it was

acquired subsequent to the judgment. But, if the judgment were a lien upon it, the limitation of the lien had run, before the levy was set aside, so that by setting aside the levy, the subsequent levy in behalf of the Clinton Bank was made good.

We entertain great doubts whether the doctrine of making defective levies good by parol, under the sheriff's deed, has not been carried too far. It is important to the purchaser at sheriff's sale, and to the person whose land is levied upon and sold, that there should be no uncertainty in any part of the proceedings, which should involve the title. This would prevent the sale of the property at a reasonable price, as no one would give full value for land where the title is doubtful. And the purchaser would at least purchase a law suit, if he did not lose the property. As a question of policy, as well as one of great interest to the parties concerned, there should be required on a levy that degree of certainty which would enable any one to know the land taken in execution. Short of this, it is difficult to say that it gives the proper notice to a subsequent purchaser, or to a plaintiff who causes his execution to be levied upon it. How was it possible for a purchaser to say in what form the two-thirds of the lot levied on should be surveyed, or from what part of the section the one hundred acres levied on in the other case, should be taken? Where one-half of a lot was advertised and sold for taxes, the supreme court held the title was bad for uncertainty. Ronkendorf v. Taylor's Lessee, 4 Pet. [29 U. S.] 349. A motion made to correct the levy on a part of lot nine, would not have been granted by the court, after the second levy was made. At least, in granting such a motion, the entry could not have had relation back to the first levy, so as to give it an advantage over the second. The court could not in that form affect legal rights. They must stand or fall upon their original legality.

The only question in the case is, whether Woodbridge, the assignee of the judgment, in relinquishing the levy, gave up a legal or equitable right, which released the complainant from his suretyship. After an instrument, by which the principal and his surety are bound, is reduced to judgment, I suppose the suretyship is merged in the judgment, and that the relation and its consequences cease to exist. The statute makes a special provision that sureties shall be designated, or may be designated as such, in the rendition of the judgment, which shall require the property of the principal to be exhausted, before that of the surety shall be levied upon. But where the judgment is not so entered, it is supposed that the relation of principal and surety can not be carried beyond the judgment. The surety, by paying the judgment or debt, may secure an immediate recourse against his principal,

and this seems to be his only recourse, except where a bill may be filed to compel the principal to bring suit. But the principal is not, on general principles, bound to active diligence. But if the rights of the surety exist after the judgment, we should not be inclined to say, that the complainant having been passive in the matter, he has no claim to a release from his suretyship by the withdrawal of the levy by Woodbridge. The right was too uncertain and doubtful to be followed by such a consequence. The bill is dismissed, and the injunction dissolved at the costs of the complainant.